case is number 25-10928 United States v. Gabriella Oropesa. Mr. Turner, excuse me, Mr. Farmer. May it please the court, my name is Matt Farmer, I represent Ms. Gabriella Oropesa. The issue in this case, at least the first issue, is whether the FACE Act implicitly precludes the resort to the 241 cause of action under the criminal statutes. This is a novel issue. The first time that the FACE Act was used by the government as a predicate for a 241 felony indictment happened only in 2022. We're three years into this experiment. And both parties in this case have acknowledged that, given the dearth of case law on this issue, that an analogous statute, 1983, may be appropriately used to interpret the three critical words of both statutes. Let me ask you two questions. Number one, is the FACE Act a law? The FACE Act is a law. Number two, and is it a law of the United States? It is a law of the United States. I mean, that seems to end the inquiry, doesn't it? We look at the plain language of 241. If it's a law of the United States, then it could be prosecuted under the Section 241. I will even go further, Your Honor, and I'll acknowledge that it is a law that secures a right, which is a necessary component of 241. But the analysis doesn't end there. The analysis makes a small step. It's a very small step to using 1983 and the fertile case law that we've had under 1983 of this very same issue, that is, whether or not there are certain laws of the United States that cannot serve as predicates for either 1983 or 241. What if those laws explicitly state that its remedies are non-exclusive? Yes, you're referring to the SAVING Act, which is, again, a fertile component of 1983 case law. And the two, actually three cases that both sides agree are the most analogous and important cases for the assessment of this issue. That is, C. Clammers, Rancho Palos Verdes, and Tvelsky. Those three cases all assess the saving clauses in those predicate statutes. And the analysis is from—I could tell you have a question, Your Honor. No. The analysis is whether the saving clauses in those predicate statutes are sufficient to preserve the 1983 remedy or not. I know, but here—this—the savings clause is Section 248d3, right? Right. And it says, nothing in this section shall be construed, ellipsis, to provide exclusive criminal penalties or civil remedies with respect to the conduct punished by this section. How do I get—how do we get around that expressed language? Well, the same way that C. Clammers and Rancho Palos Verdes and Tvelsky did. And that is assess whether or not they preserve specifically the 1983 remedy or not. And by analogy in this case, whether they preserve the 241 remedy. Why would that language not be broad enough to sweep the FASE Act in? Well, because the saving clauses in the C. Clammers and Rancho Palos Verdes cases, very similar language, materially identical language. Categorically, C. Clammers and Rancho Palos Verdes held that despite the seemingly sweeping language, it did not preserve the remedies available under the predicate statute. In other words, it preserved only remedies outside the regime of that statute. So, C. Clammers held that the saving clause there did not allow those two environmental statutes to be used as predicates under 1983. This savings clause, the language is almost—I mean, it's almost the same as the savings clause in Title II of the Civil Rights of 1964? And are you referring to the Johnson case? Yes. Well, Johnson is a case I think that very much illustrates the issue in this case. And that is, in Johnson, the Supreme Court allowed the government to use 241, the same statute here, and allowed the government to use Title II of the 1964 Act, which regards the race discrimination in public accommodations. And the takeaway from Johnson—and again, this is 15 years before C. Clammers, so it's 15 years before this whole doctrine evolved in 1983—but that court did so because there was no criminal component in Title II. So, if we had Johnson today and if the court were to adopt our principle, Johnson would be decided the same way because Title II of the 1964 Act does not have criminal penalties. And therefore, there was no implicit preclusion of 241. So, Johnson illustrates the point here without really knowing it because this whole implicit preclusion under 1983 hadn't yet begun. Is it your argument that you can't conspire to violate the FACE Act at all or you just can't use 241? The latter. I think that if the government—well, the first argument—I'm sorry. If that's the case, how do you charge a conspiracy to intimidate a reproductive rights facility? Well, okay. I misspoke, Your Honor. Our first argument is that you cannot. There is no such thing as conspiracy to commit the FACE Act. And the argument is the FACE Act, as the government has argued, was implemented in response to the Bray case, which said that there would be no conspiracies under the civil conspiracy in this context generally. And therefore, Congress passed the FACE Act to respond to this specific threat of misconduct, criminal conduct. But it's telling because the whole purpose was to respond to a Supreme Court case that did not allow conspiracies. So, what did Congress do? It passed a criminal statute and a lot of civil penalties that did not include conspiracies. So, the FACE Act is remarkably comprehensive. And it's telling that the FACE Act did not include conspiracy count in any capacity, either civilly or criminally, and also— If that was the case, then the FACE Act would not explicitly state that its remedies are non-exclusive. Well, again, that's the Savings Act. And I go back to C. Clammers and Rancho Palos Verdes. These saving acts refer to statutes and even common law outside the statute that we're talking about. So—and it makes—really, it makes some sense because if there is a statutory regime in the predicate statute, why would a statute say, well, you can enforce this statute in some other way? But the law has been pretty settled for close to a century that you can prosecute something through a conspiracy with a higher penalty than you can the substantive object of the conspiracy. Why isn't that exactly what's happening here? I mean the Supreme Court has cases going back saying, yes, the object of the conspiracy provides for a lower punishment, but you can charge it as an object of a much higher penalized conspiracy. So, why in theory and in substance is there any difference here? Well, that dovetails in a way with our second issue, and that is the Fisher argument. And I believe the issue is whether a conspiracy—conspiracies under Fisher, for instance—if a conspiracy is charged, it cannot exceed the penalty of the underlying offense, the substantive offense. And— What case says that? Well, Fisher says that. Fisher says that if— Across the board? I mean, Section 371, which is the general federal conspiracy statute, has that provision in it that if you charge a misdemeanor as the object of a 371 conspiracy, you can't sentence higher than the maximum punishment for the misdemeanor. That's right. And that was my second part of the response to Judge Wilson's question, and that is there can be a conspiracy charge even when it doesn't exist in the substantive statute. But under Fisher, the government is limited to misdemeanor penalties. We don't have a Fisher situation here because Fisher involved disparities in sentences for the same conduct, for the same—you can't have higher penalties for the same conduct. But here, it's different conduct. You have a conspiracy in the substantive offense. That's what makes this case different from Fisher, right? Well, Fisher is penalty-intensive. The outcome is determined by the penalty. So the question becomes, is the government allowed to charge a conspiracy as a felony where if the substantive offense, if committed, would only be a misdemeanor? Thank you. All right. Thank you very much. You've saved your time for rebuttal. Ms. Tilley. Good morning, Your Honors. Harmeet Dhillon, Assistant Attorney General for Civil Rights. And with me at the council table is my colleague Greta Giesecke. I think the law is pretty well settled here in the sense that the FACE Act is clearly, as Judge Wilson mentioned, a law of the United States. It is also clear that distinguishing the handful of cases that are analyzing the 1983 analysis, which of course is civil, not criminal, those cases are easily distinguishable. If you look at Johnson, for example, Johnson had a more complex savings clause that reserved the penalties under Title II for the parties covered by Title II, but then also allowed non-exclusive remedies for anybody else. And that is the situation in which the quote-unquote outside hoodlums were allowed to be prosecuted under the conspiracy statute. They're not covered by Title II. So that's distinguishing the Johnson analysis. And when you get into the other two cases, Sea Clambers and Rancho Palos Verdes, the savings clauses are not as broad as the savings clause in this case, number one. And number two, each of those two cases involves a complex regulatory statutory scheme that has certain gating items for a party to come into court. For example, in Rancho Palos Verdes, the Telecoms Act of 1966 requires plaintiffs to seek review within 30 days of a final action. It's an Administrative Procedures Act-type remedy scheme. That is some extra hurdles that have to be jumped through. And Sea Clambers, similarly, is a regulatory scheme involving environmental laws. Private rights of actions have notice requirements in those two statutes. And the appellant in this case, Ms. Ora Pace's counsel, has not identified any degree to which the application of 241 in this factual setting to the FACE Act predicates would thwart any enforcement mechanism in the FACE Act. The FACE Act simply doesn't have any of those types of hurdles or gating items to it. It's a traditional type of a statute that has a combination of civil remedies, some criminal remedies that are escalating in nature. And it is the type of case that when you look at the CLAN Act and its intention and the extensive case law under the CLAN Act, it is clear that the courts have held repeatedly that it is appropriate for conspiracies under the CLAN Act to have higher penalties than the predicate remedies under the underlying statutes. But his point is that because Section 248, the FACE Act, has its own criminal remedial scheme, you can't take another criminal statute to supplant what Congress apparently wanted to enact with the FACE Act. That is the argument. However, to accept that argument would be to render the explicit language of the savings clause in the FACE Act as surplusage. It is a very broad savings clause, and it is very clear that Congress intended in the FACE Act to exclude not only to preserve both civil and criminal remedies under state and federal law that are not inconsistent with the statute. And in this case, it is correct that the FACE Act doesn't include a conspiracy statute, but neither does it exclude it. In fact, I think it is when you look at the use of 241 in conjunction with the FACE Act, they are complementary to one another. They are not contradictory to one another. This goes to another question that Judge Wilson had posed with respect to some of these other statutes. When you look at Snyder and you look at Fisher, if I may jump to that analysis for a moment, first of all, as a district court held, neither of those cases, recent Supreme Court rulings, applies. Each of these two cases includes some sophisticated tools for statutory interpretation that would apply in a situation in which a criminal statute or multiple criminal statutes, if applied and read together, would reach different results. And in this case, of course, a conspiracy, an inchoate offense of conspiracy is a different criminal offense than the underlying misdemeanor and then felony penalties and the escalating scheme under the FACE Act. These are not inconsistent at all. And even the legislative history of the Klan Act indicates that Congress believed that the dangers of people putting on masks and going onto the roads to terrorize people exercising their individual rights merited more severe penalties than potentially the underlying statutes because of the fear that could be caused by these types of conspiracies, the complex nature of them, the perhaps future offenses that could occur. And so the use of the FACE Act in conjunction with 241 is entirely consistent with the history of the Klan Act, as well as the legislative history and intention and the explicit language of the FACE Act and its very broad savings clause. She also argues that the district court in part misunderstood her argument. And the brief for Ms. Oropesa reemphasizes over and over again that she's not challenging whether, you know, the FACE Act is a law or a law of the United States or even a law meant to secure rights. It's the sort of sea clamors based argument that there is such a remedial scheme in the FACE Act that you can't use Section 241 to punish a conspiracy. What is the government's response to that? Judge Jordan, the government's response is that saying it doesn't make it so. I think it is aspirational to suggest that the type of remedial scheme set forth in either Rancho Palos Verdes or sea clamors, which are highly regulatory in nature and they provide certain—I look at it as the example of Title VII, which has certain notice requirements that you have to jump through. It's called a layer cake of procedural hurdles. None of that exists in the FACE Act. The FACE Act has multiple penalties. It can be prosecuted and brought civilly by an attorney general, a state attorney general, by the federal government, by private parties. And the other point I'd like to make on that when you look at the other argument that's being made as to whether it would be more appropriate for the 371 General Conspiracy Statute to be used instead of the CLAN Act is that the General Conspiracy Statute goes to offenses against the United States. And the CLAN Act is unique in that it covers individual rights, and that is why that statute is distinct and so important. The individual rights found and secured by really the revolutionary law in question are simply not interchangeable. They're not interchangeable. And so the century of precedent under the CLAN Act of bringing conspiracy charges for any host of a number of different rights-creating statutes that have been found, even new statutes like the FACE Act, I think is an important distinction here. And that is why one doesn't even need to reach Snyder or Fisher because we aren't really reaching any statutory conflict that would require a lenity analysis here because these are simply not inconsistent with one another. Why was Ms. Oropesa charged with conspiracy and the other two were just charged with substantive violations? She was treated more severely than her co-conspirators. Well, they were actually all—let me take that back. So I wasn't trial counsel, but my understanding from discussing this with the trial team is that the offenses in question occurred in different judicial districts in Florida. And so the choice was made, the prosecutorial choice was made to prosecute the conspiracy and the underlying offenses that occurred in the middle district of Florida in that district. Ms. Oropesa's underlying predicate offenses did not occur in the middle district. And so for prosecutorial discretion reasons, she was charged only with the offense that she could be. She participated in a conspiracy that included all of the predicate crimes. And so one could have theoretically prosecuted her in different judicial districts for those offenses. The choice was simply made to do the one prosecution in this case. And she's the only one who chose to go to trial, and her co-conspirators pled and got lesser sentences. But all of them got significantly less sentences than— But they weren't indicted for conspiracy. They were just indicted on the substantive FASE Act violation. And those offenses occurred in the middle district. And that's my understanding. I'm taking that from conversations with counsel. I don't know that firsthand. Does the court have any other questions for me? No, thank you very much. Thank you. Thank you. Thank you. I wanted to respond. Judge Wilson, all four defendants were charged in count one, which was the 241 count. The other three were charged with substantive FASE Act misdemeanors. Because those occurred—that was based on one event that occurred in the middle district of Florida that Ms. Rapesa did not personally participate in under the allegations and the trial evidence. So what I'd like to do is to illustrate our argument, perhaps better, is to use the FASE Act itself as an example of how we believe the analysis should proceed. And that's because the FASE Act, in addition to the criminal components, also has a private citizen's right. That's subsection C1. So there's an express private right of action in the FASE Act itself. So I don't think there could be any doubt that using the civil claim of individuals under a theory of 1983, I don't think there could be any doubt that a court would not permit that under C. Clammers, under Talefsky, and under Rancho Palos Verdes. Regardless of the comprehensiveness of the scheme, you mean that whenever there's a civil parallel provision for recovery, the criminal component can't be used as the object for a criminal conspiracy? No, no. I'm using it as an illustration of how C. Clammers and Rancho Palos Verdes works in a criminal context. So just as an illustration, it's clear that under the FASE Act, the civil component could not be used under 1983. There's two reasons. C. Clammers and Rancho Palos Verdes look to whether the predicate statute has an express private right of action or not. Number one. Number two, it looks to see if 1983 would give more remedies to the litigant. Number two. Two prompts. Under both of those standards, 1983 would not be permitted to be used as the FASE Act civil predicate. So the FASE Act itself offers a great example of how we propose the criminal part of the statute should proceed. And the theory is that when Congress has acted with particularity, with specificity about what's illegal and what's not, the courts favor the specific over the general. And since C. Clammers in 1981 going to Rancho Palos Verdes in 2005 and then Tvelsky in 2023, the standard has been exactly the same for whether 1983 can be used. It cannot if the predicate statute has an express private right of action and whether 1983 gives more remedies. But are there any cases anywhere in the country applying that trilogy of cases to the criminal side? There is not. There is not. And part of that is just a function of how novel this is. And I'm not digging the government for using, you know, creative novel thinking. That's not the problem. The problem is there just hasn't been a body of case law like 1983 under 241. I mean, we have to look back at Johnson to see anything from the Supreme Court that's even close. And that's 15 years before this doctrine started emerging under 1983. And it's all about how do you put a little bit of limitation on the open-ended language of 1983 and 241? Because on its face, 241 applies to any law of the United States. And that doesn't necessarily have to be a law that we would consider criminal, that should be punished criminally. And, you know, the only reason Johnson I would propose, the only reason Johnson came to the conclusion, is because Title II had no criminal penalties. Here, unlike Johnson, unlike Title II, Congress has deliberately created an incredibly comprehensive criminal structure. And the government waited 28 years after the implementation of the FACE Act to charge the FACE Act as a predicate under 241. 28 years. That itself doesn't make it unlawful, but it sure is telling. So that's all I have. Thank you. All right. Thank you both very much. All right. We're in recess for today.